IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICHOLAS AYALA, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-196 |
| WASTE MANAGEMENT OF ARIZONA, INC., | § § § § | |
| Defendant. | § | |
| JAMES BOGDEN, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-198 |
| WASTE MANAGEMENT OF COLORADO, INC., | § § § § | |
| Defendant. | § | |
| MARK ABLES, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-199 |
| WASTE MANAGEMENT, INC. OF TENNESSEE, | § § § § | |
| Defendant. | § | |
| REYNOLD VICENTE, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-218 |
| WASTE MANAGEMENT OF CALIFORNIA, INC., | § § § § | |
| Defendant. | § | |

| ERWIN RUEMMELE, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-220 |
| | § | |
| WASTE MANAGEMENT, INC. | § | |
| OF FLORIDA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

In June 2018, several truck drivers sued Waste Management, Inc., alleging that they were not paid for overtime in violation of the Fair Labor Standards Act. (Docket Entry No. 1). The court denied the plaintiffs' motion for nationwide collective-action certification and dismissed the non-Texas drivers' claims without prejudice. Drivers in Arizona, California, Colorado, Florida, and Tennessee then filed five separate lawsuits in the Southern District of Texas, each alleging FLSA claims on behalf of drivers working for Waste Management in these five states. These related cases were transferred to this court in accordance with usual practice. Waste Management has now moved to transfer these cases to district courts in each of the five plaintiffs' home state. 28 U.S.C. § 1404(a).

Based on a careful review of the complaints; the motions and responses; the record; the arguments of counsel; and the applicable law, the court grants Waste Management's motions to transfer. (Case No. H-19-196, Docket Entry No. 16; Case No. H-19-198, Docket Entry No. 18; Case No. H-19-199, Docket Entry No. 10; Case No. H-19-218, Docket Entry No. 19; Case No. H-19-220, Docket Entry No. 20). The reasons are explained in detail below.

2

## I. Background

Waste Management is a waste-collection-service provider with more than 540 facilities across the country and over 15 facilities in Texas.[1] In June 2018, Larry Green, Andrew Gutierrez, Richard Reyes, Erwin Ruemmele, Reed Rogne, Charles Nevius, and James Ivey, on behalf of similarly situated plaintiffs, sued Waste Management and its local affiliates and subsidiaries in Arizona, California, Florida, Minnesota, New Jersey, Pennsylvania, and Texas. (Case No. 18-cv-1841, Docket Entry No. 23 at 2). These plaintiffs are current and former waste-disposal drivers who have worked for Waste Management and its affiliates and subsidiaries since January 2016. (Docket Entry No. 1 at 1, 3).

The plaintiffs contended that they routinely worked more than 40 hours each week without overtime pay. (*Id.* at 2, 4). They alleged that Waste Management adopted a policy to automatically deduct 30 minutes from the plaintiffs' daily worktime as "meal breaks," even if the plaintiffs did not take the breaks and continued driving their routes for all or part of the 30-minute period. According to the plaintiffs, Waste Management violated the FLSA by failing to compensate them for the two and a half hours or more each week they worked during these meal breaks. (*Id.* at 5). The plaintiffs asked for overtime wages, liquidated damages, attorneys' fees, and costs. (*Id.* at 8).

In September 2018, the court denied the plaintiffs' motion to certify a nationwide collective action. (Docket Entry No. 47). Waste Management argued that record evidence proved that many of its regional and local facilities adopted different policies for tracking the drivers' meal-break time and for crediting the drivers for the hours they worked rather than taking all or part of the meal breaks. (Docket Entry No. 50 at 12). The record showed that drivers in some of the states

---

[1] At the hearing, counsel of Waste Management stated that the company has more than 2,000 employees and 39 sites in Arizona; 38 facilities located in 8 areas in Florida; and several dozens of facilities located in 26 areas in California.

3

were unionized, while others were not; some facilities or regions followed a practice of compensating drivers for their allowed meal breaks, while others did not; and some facilities automatically deducted 30 minutes from each driver's daily worktime, while others required the drivers to self-report when actual meal breaks began and ended. (*Id.* at 15). In short, some Waste Management subsidiaries or affiliates credited drivers toward overtime compensation for their meal-break time, in whole or in part, and some did not.

Because of the disparate practices followed by Waste Management's regional affiliates, subsidiaries, and facilities, the court denied the plaintiffs' motion to certify a nationwide collective action. The court instead conditionally certified a collective action "consisting of similarly situated employees of Waste Management and its affiliates and subsidiaries within Texas, limited to those facilities that do not pay for meal beaks . . . and . . . automatically deduct[] a certain amount of time for meal breaks." (Docket Entry No. 47). The court dismissed the non-Texas plaintiffs and substituted Waste Management of Texas as the defendant. (Docket Entry No. 64).

Although counsel representing plaintiffs from other states indicated at the conditional collective-action certification hearing that they would separately file lawsuits in the plaintiffs' home states, the plaintiffs instead filed five new lawsuits *in this district* against five of Waste Management's non-Texas affiliates and subsidiaries. Each case alleges the same failure to credit the drivers toward overtime compensation for the work done during their meal breaks. The cases are:

- *Carlos Ayala v. Waste Management of Arizona, Inc.*, H-19-196;
- *James Bogden v. Waste Management of Colorado, Inc.*, H-19-198;
- *Mark Ables v. Waste Management, Inc. of Tennessee*, H-19-199;
- *Reynold F. Vicente v. Waste Management of California, Inc.*, H-19-218; and

4

- *Erwin Ruemmele v. Waste Management, Inc. of Florida*, H-19-220.

(Docket Entry No. 10 at 3–4).

Waste Management and its subsidiaries and affiliates have moved to transfer these cases to the district courts in the plaintiffs' five home states and proceed in this district with the case involving only Texas drivers.[2] Waste Management argues that transfer is proper on the same ground this court identified in declining to certify a nationwide collective action—that the plaintiffs were not similarly situated across the states. Waste Management also argues that the evidence and witnesses relating to claims the non-Texas drivers asserted are in Waste Management's regional offices and facilities where these drivers worked, not in Texas. (Docket Entry No. 10 at 8).

## II. The Legal Standard

A court may transfer a case "to any other district . . . where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).[3] "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 313 (5th Cir. 2008). The movant must demonstrate that its preferred venue is "clearly more convenient than the venue chosen by the plaintiff." *Id.* at 315.

---

[2] *See* Case No. H-19-196, Docket Entry No. 16; Case No. H-19-198, Docket Entry No. 18; Case No. H-19-199, Docket Entry No. 10; Case No. H-19-218, Docket Entry No. 19; Case No. H-19-220, Docket Entry No. 20.

[3] The defendants moved for transfer under 28 U.S.C. § 1404(a). They do not dispute that venue is proper in the Southern District and therefore, 28 U.S.C. § 1406(a) does not apply. *See* WRIGHT & MILLER, 15 FEDERAL PRACTICE & PROCEDURE § 3845 (4th ed. 2016) ("Section 1404(a) applies when the transferor is a proper venue. Section 1406(a) applies when the transferor is an improper venue.").

The Fifth Circuit has adopted the private- and public-interest factors set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine whether to transfer. *See Volkswagen II*, 545 F.3d at 315; *In re Radmax, Ltd.*, 720 F.3d 285, 288–89 (5th Cir. 2013). The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. These factors are illustrative, not exhaustive, and none "can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986)). Transferring venue under § 1404(a) does not require a showing that the *Gilbert* factors substantially outweigh the plaintiff's chosen venue. Instead, it is enough to show that the proposed venue is "clearly more convenient" than the original one. *Volkswagen II*, 545 F.3d at 315–17.

The Fifth Circuit has not specified the precise scope of review or other evidentiary rules governing a § 1404(a) motion. Courts consistently look at evidence in the record beyond the plaintiff's complaint allegations. *See LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 823 n.1 (N.D. Tex. 2013) ("In considering a motion to transfer venue [under § 1404(a)], the Court may consider affidavits submitted by either party."); *Volkswagen II*, 545 F.3d 317 (considering the

defendant's affidavits supporting transfer); *see also Brown v. Arkoma Tanks, LLC*, No. 2:16-cv-7, 2016 WL 4083060, at *4 (S.D. Tex. Apr. 8, 2016); *Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, No. A-18-cv-413LY, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018). The court views the facts in the light most favorable to the plaintiffs. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009).

The plaintiffs' choice of venue is not entitled to special deference in the § 1404(a) venue-transfer analysis. *Volkswagen II*, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). The movant's burden of showing that the transferee venue is "clearly more convenient" adequately accounts for a plaintiff's choice of forum. *See id.*; *Arkoma Tanks*, 2016 WL 4083060, at *3. Courts give more weight to the plaintiffs' choice of forum when the chosen forum is the plaintiffs' home state. *J&J Sports Produc., Inc. v. Riviera*, No. H-10-1138, 2010 WL 3447719, at *2 (S.D. Tex. Aug. 30, 2010). That deference is limited here because Texas, the chosen forum, is not the "home state" of the plaintiffs working in Arizona, California, Colorado, Florida, and Tennessee. *Id.* The plaintiffs' choice of forum is also entitled to less deference because they sought to certify the lawsuits as collective actions on behalf of other similarly situated drivers. *See Mateos v. Select Energy Servs., LLC*, 919 F. Supp. 2d 817, 821 (W.D. Tex. 2013) (courts generally gave less deference to the plaintiff's venue choice when the plaintiff sought to certify a class action); *Webb v. Setton Towing, LLC*, No. 3-12-143, 2012 WL 5967962, at *5 (S.D. Tex. Nov. 28, 2012) (same); *Westberry v. GusTech Commc'ns, LLC*, No. 3:17-cv-3162-D, 2018 WL 3548869, at *4 (N.D. Tex. July 24, 2018) (same).

7

## III. Analysis

The parties do not dispute that these five cases could have been brought in the plaintiffs' home states. (Docket Entry No. 10 at 9). The issue is whether district courts in those states are "clearly more convenient" than the Southern District of Texas.

### A. The Private-Interest Factors

#### 1. Ease of Access to Sources of Proof

The first private-interest factor considers the ease of access to sources of proof. Waste Management argues that this factor favors transferring these cases to the plaintiffs' home states, Arizona, California, Colorado, Florida, and Tennessee. (Case No. H-19-196, Docket Entry No. 16 at 10; Case No. H-19-198, Docket Entry No. 18 at 10; Case No. H-199, Docket Entry No. 10 at 10; Case No. H-19-218, Docket Entry No. 19 at 10; Case No. H-19-220, Docket Entry No. 20 at 10). According to Waste Management, the lead and opt-in plaintiffs reside and worked for the company in their home states. The putative class members also reside there. Waste Management contends that material witnesses, "including all managers and non-party coworkers," reside and work in the states where Waste Management's regional and local affiliates and subsidiaries are located. (*Id.*). Waste Management argues and presents evidence showing that:

> [these witnesses] have knowledge of [the plaintiffs'] and the putative class members' employment, the scope of their work, manager and employee training, routes, schedules, timekeeping, the meal break auto-deduction policy and its implementation, policies relating to prohibited work during meal breaks, and policies, procedures, and practices related to pay.
>
> The non-management employees will have knowledge of tracking and monitoring [the plaintiffs'] and the putative class members' daily schedules, attendance[,] and timekeeping in [these states]. All other management and non-management witnesses . . . including those drivers and other administrative personnel who worked with them, [are] all [located in these states].

8

(*Id.*). Waste Management also argues and presents evidence showing that the plaintiffs' and the putative class members' personnel files and other paperwork related to their employment, including their "route sheets, work schedules, driver vehicle inspection reports, Kronos time detail reports, and Kronos exception sheets," are all kept on-site at each of Waste Management subsidiary or affiliate where the drivers worked. (*Id.*). Waste Management submitted affidavits of its regional Human Resources Directors to support these arguments.[4]

The plaintiffs responded by arguing that the first factor supports denying transfer. (Case No. H-19-196, Docket Entry No. 21 at 5–6; Case No. H-19-198, Docket Entry No. 20; Case No. H-19-199, Docket Entry 21 at 3–4; Case No. H-19-218, Docket Entry No. 21; Case No. H-19-220, Docket Entry No. 26). They contend that regardless of where the documentary evidence is located, most can be transferred electronically. *Front Row Techs., LLC v. MLB Advanced Media, L.P.*, No. 3:12-cv-1639-K, 2012 WL 12044383, at *3 (N.D. Tex. Dec. 17, 2012) ("[T]echnological convenience of e-discovery significantly diminishes concerns associated with the location of evidence.").

The plaintiffs anticipate that "a substantial portion of the documentary evidence" and "a number of critical witnesses" are in Houston, where Waste Management is headquartered. But the plaintiffs did not identify what the evidence in Texas is, who the witnesses residing in Texas are, or what these witnesses would testify to. While certain categories of documents are clearly important—company-wide policy manuals on drivers' mealtime-break compensation, as well as

---

[4] These affidavits are from: Shannon Teixeira, for Waste Management Colorado and Arizona, (Case No. H-19-198, Docket Entry No. 18-11; Case No. H-19-196, Docket Entry No. 16-11); Benjiman Housel, for Waste Management Tennessee (Case No. H-19-199, Docket Entry No. 10-11); Michael Dory, for Waste Management California (Case No. H-19-218, Docket Entry No. 19-11); and Latrenia Denise Bass, for Waste Management Florida (Case No. H-19-220, Docket Entry No. 20-11).

regional or facility-specific documents showing compensation—there is no analysis as to what documents or which witnesses are key, and why.

One plaintiff explained that:

> [b]ecause the parties have not yet engaged in discovery, [the plaintiffs] cannot identify by name and title the defense witnesses that reside in this district and division. However, the burden is not on [the plaintiffs] to do so at this stage of the litigation. [The plaintiffs] ha[ve] identified a category of individuals who will be subject to deposition in this matter that are located in and around the greater Houston area. Further, it is these corporate individuals who were, on information and belief, responsible for the auto-deduction policy that applies across all of Waste Management's subsidiaries and anticipate that their testimony will be of critical importance in this matter. [The plaintiffs] additionally anticipate[] that relevant witnesses on [Waste Management's] affirmative good-faith defense and on the issue of willfulness are located in Houston, Texas. After discovery, [the plaintiffs] anticipate[] discover[ing] the identities of other relevant witnesses who reside in Houston.

(Case No. H-19-1996, Docket Entry No. 21 at 6 n.1). This plaintiff's argument is unpersuasive. Even if some of Waste Management's national officers will testify, and even if they are primarily in Texas, Waste Management's affidavit evidence shows that there are more critical witnesses located outside of Texas, whose testimony would bear on the company's regional meal-break practices, worktime-calculation methods, and drivers' pay logs.

Because most of the important evidence and key witnesses are located outside Texas and in the proposed transferee districts, the first factor weighs strongly in favor of transfer.[5] The

---

[5] See Webb, 2012 WL 5967962, at *3–*4 (the first factor weighed in favor of transfer because documents, contracts, payroll information, and employee schedules were located in Louisiana); McPherson v. Leam Drilling Sys., LLC, No. 2:14-cv-113, 2014 WL 4063983, at *4 (S.D. Tex. Aug. 15, 2014) (the first factor weighed in favor of transfer because "the documentary evidence and a sizeable percentage of the potential witnesses [were] located in" the transferee district); Arkoma Tanks, 2016 WL 4083060, at *4 (same). To the contrary, the plaintiffs did not specify or submit any competent evidence to show that any important evidence or key witnesses are in Texas or why they are more important than the evidence and witnesses identified by Waste Management. See Herbert v. Wade, No. 3:13-cv-076, 2013 WL 5551037, at *3 (S.D. Tex. Oct. 7, 2013) (because the plaintiffs did not identify any evidence located in the forum state, the court found that the first factor favored transfer); Blake v. Archer Drilling LLC, No. 2:14-cv-120, 2014 WL 3696280, at *2 (S.D. Tex. July 23, 2014) (allowing transfer because the plaintiff failed to identify documents available in the forum state that "would undercut even the little weight in favor of transfer").

plaintiffs argue that Waste Management's Houston office made national automatic mealtime-deduction policies applicable to all drivers in all of Waste Management's affiliates and subsidiaries. The key issue, however, is not what national written policies Waste Management allegedly adopted, but whether these polices are inconsistently applied in practice. Waste Management argues and presents evidence showing that the automatic meal-break deduction was not consistently applied to drivers in all Waste Management's facilities in different states. The record evidence shows that some Waste Management facilities or regions compensated drivers for their meal breaks; some facilities automatically deducted the 30-minute meal break from each driver's workday, reducing the hours they worked and the hours eligible for overtime compensation; and some facilities required the driver to self-report their actual meal-break time. (Docket Entry No. 50 at 12, 15). Whether the drivers were unionized also affected the local practices. The evidence and witnesses as to the policies applied in Waste Management's Arizona, Colorado, California, Florida, and Tennessee facilities are likely to be located in each state.

Because the plaintiffs' complaints are based on facts requiring proof from witnesses and documents in the five states, the first private-interest factor weighs in favor of allowing transfer.

### 2. Availability of Compulsory Process

The second private-interest factor considers the availability of compulsory process over witnesses. Neither Waste Management nor the plaintiffs identified any specific nonparty witness who is not willing, and could not be compelled by this court, to testify. *See Westberry*, 2018 WL 3548869, at *4 (the second private-interest factor is neutral). But Waste Management argues that the time period involved meant that former Waste Management managers or employees who worked in Arizona, Colorado, California, Florida, and Tennessee and are knowledgeable about the local time-deduction practices may have left the company and would not testify voluntarily.

Because these former managers or employees are more likely to reside the five states where they worked, compulsory process is more likely to be available in these five states than in this court in Texas. The second private-interest factor weighs in favor of allowing transfer.

### 3. The Willing Witnesses' Costs of Attendance

The relative convenience of the witnesses—especially nonparty witnesses—is often recognized as the most important factor. *Sandbox Logistics LLC v. Grit Energy Sols. LLC*, No. 3:16-cv-12, 2016 WL 4400312, at *5 (S.D. Tex. Aug. 17, 2016); *Barnes v. Petroleum Coordinators, Inc.*, No. H-12-1332, 2012 WL 4630570, at *3 (S.D. Tex. Oct. 2, 2012) (citation omitted). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204. The witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, home, family, and community." *Volkswagen II*, 545 F.3d at 318.

As discussed above, key witnesses who would testify to the drivers' driving routes, workhours calculation, and the practices of meal-break deduction are in the plaintiffs' home states of Arizona, California, Colorado, Florida, and Tennessee, all more than 100 miles away from this court. Most of these witnesses, except perhaps former managerial employees, are party witnesses. To the extent they are nonparties, they appear to be in each plaintiff's home state. The third factor favors transfer. *See Barnes*, 2012 WL 4630570, at *4; *Archer Drilling*, 2014 WL 3696280, at *3.

### B. The Public-Interest Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

Waste Management submitted evidence comparing the median disposition times for civil cases in the Southern District of Texas with cases in the Central District of California, a 2.6 month

12

difference. This factor is neutral. *See Rosemond v. United Airlines, Inc.*, No. 4:13-cv-2190, 2014 WL 1338690, at *4 (S.D. Tex. Apr. 2, 2014) (a difference of 2.1 months between district courts' median time-interval is neutral); *Barnes*, 2012 WL 4630570, at *3; *Mallory v. Lease Supervisors, LLC*, No. 3:17-cv-3063-D, 2018 WL 1457250, at *5 (N.D. Tex. Mar. 23, 2018).

The plaintiffs argue that the first public-interest factor weighs in favor of keeping the plaintiffs' lawsuits in one Texas court because the six cases involve identical FLSA claims, it is efficient to have one court decide the issues instead of six, and the Southern District of Texas is the only appropriate venue for all the cases. The plaintiffs each alleges that he or she worked during their meal breaks and was not paid for overtime. But the presence of different practices in compensating the drivers for their meal breaks, which turn on local practices of Waste Management subsidiaries and facilities, does not require a single court to resolve all these disputes. Having six different courts and juries resolve these cases based on the evidence located in each state neither increases administrative difficulty nor risks inconsistent verdicts.

### 2. The Local Interests

The second public-interest factor evaluates the local interest in the dispute. This factor generally favors venue where the acts giving rise to the lawsuit occurred. *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (citing *Spiegelberg*, 402 F. Supp. 2d at 792)); *see also Mateos*, 919 F. Supp. 2d at 824 ("There is a local interest in having localized controversies decided at home." (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)).

The plaintiffs' alleged FLSA violations separately occurred in Arizona, California, Colorado, Florida, and Tennessee, at Waste Management's facilities in these different states, depending on where the drivers worked. *See Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569,

573 (N.D. Tex. 2005) (the alleged FLSA violations occurred at the places where each of the plaintiffs worked and resided); *Mallory*, 2018 WL 1457250, at *5 (same). These states where the plaintiffs worked have a stronger interest in these five lawsuits than Texas. Although Waste Management is headquartered in Texas, most of the putative class members and the key witnesses in the five cases reside in one of these states. *See Volkswagen II*, 545 F.3d at 317–18 (the local interest was greater where the relevant events occurred and the witnesses were located); *Barnes*, 2012 WL 4630570, at *4 (even if the defendant's principal place of business was in Louisiana, Texas had a stronger local interest in this case, because the plaintiff performed his work in Houston and because most key witnesses resided in Houston); *see also Mateos*, 919 F. Supp. 2d at 825 (because the alleged FLSA violations "occurred throughout a number of states," the district where the defendant's headquarters was located did not have the strongest, or even a strong, interest in the lawsuit).

Because Arizona, California, Colorado, Florida, and Tennessee each has a stronger local interest in the case involving drivers in that state than Texas, this factor favors transfer.

### 3. Familiarity with the Law and the Avoidance of Unnecessary Problems of Conflict of Laws

The plaintiffs' Fair Labor Standards Act claims are based on federal law. The proposed transferee federal courts would be "just as familiar with the FLSA and just as competent to hear this type . . . claim as this [c]ourt." *Kervin v. Supreme Serv. & Specialty Co., Inc.*, No. 2:15-cv-102, 2015 WL 1540157, at *6 (S.D. Tex. Apr. 7, 2015); *Arkoma Tanks*, 2016 WL 4083060, at *4.

The plaintiffs in three of the cases asserted state-law claims under Arizona, Colorado, or California law. (Case No. 19-cv-196, Docket Entry No. 1; Case No. 19-cv-198, Docket Entry No. 1; Case No. 19-cv-218, Docket Entry No. 1). The federal courts located in those states are likely to be more familiar with those state-law claims than the Southern District of Texas. *See e.g.*

*Arkoma Tanks*, 2016 WL 4083060, at *6 (the Western District of Oklahoma "has likely gained more familiarity with the Oklahoma Labor Act than the Southern District of Texas"); *Kervin*, 2015 WL 1540157, at *6 (same); *see also Bunnett & Co., Inc. v. Dores*, No. A-15-cv-1104, 2016 WL 247669, at *7 (W.D. Tex. Jan. 20, 2016). This last public-interest factor weighs in favor of transferring at least the Arizona, Colorado, and California plaintiffs' cases.

### C. The Court's Order Denying Nationwide Class Certification

In September 2018, the court denied the plaintiffs' motion to certify a nationwide collective action after finding that Waste Management's subsidiaries and affiliates in the different states applied different state or facility-specific practices for tracking the drivers' meal-pbreak time and for calculating their overtime pay. (Case No. H-18-1841, Docket Entry No. 47). These variations defeated the nationwide collective-action certification the plaintiffs sought, and subclassifying drivers from each state would not resolve the lack of similarity or the variations in Waste Management's state or regional practices. Keeping all these cases in the Southern District of Texas and certifying them as separate collective actions would circumvent the court's September 2018 Order. This factor also favors transferring these five cases.

### IV. Conclusion

The four private-interest factors each weighs in favor of allowing transfer. One public-interest factor favors transfer, one favors transferring three cases, and one is neutral. Waste Management has shown that district courts in Arizona, Colorado, California, Florida, and Tennessee are clearly more convenient forums than this court. The court grants Waste Management's motions to transfer, (Case No. 19-196, Docket Entry No. 16; Case No. H-19-198, Docket Entry No. 18; Case No. H-19-199, Docket Entry No. 10; Case No. H-19-218, Docket Entry No. 19; and Case No. H-19-220, Docket Entry No. 20), and transfers:

- *Carlos Ayala v. Waste Management of Arizona, Inc.*, No. H-19-196, to the District of Arizona;

- *James Bogden v. Waste Management of Colorado, Inc.*, No. H-19-198, to the District of Colorado;

- *Mark Ables v. Waste Management, Inc. of Tennessee*, No. H-19-199, to the Western District of Tennessee;

- *Reynold F. Vicente v. Waste Management of California, Inc.*, No. H-19-218, to the Central District of California; and

- *Erwin Ruemmele v. Waste Management, Inc. of Florida*, No. H-19-220, to the Middle District of Florida.

SIGNED on May 10, 2019, in Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge